UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JUAN ALFONSO NUNO VELASCO,<br><br>Petitioner,<br>v.<br><br>TIMOTHY FILSON, *et al.*,<br><br>Respondents. | Case No. 3:13-cv-00431-MMD-VPC<br><br>ORDER |

Before the Court for decision is a habeas corpus petition under 28 U.S.C. § 2254 brought by Juan Alfonso Nuno Velasco, a Nevada Prisoner. (ECF No. 47.)

I. **PROCEDURAL BACKGROUND**[1]

On May 15, 2006, Nuno Velasco entered a guilty plea in the Second Judicial District Court for Nevada to the charge of second degree murder with use of deadly weapon. Nuno Velasco, along with his co-defendant Uriel Barajas Velasco, had originally been charged with open murder, first-degree kidnapping, and robbery with the use of a firearm, relating to the death of Antoinette Howard. According to preliminary hearing testimony, Nuno Velasco admitted to law enforcement officials that he (1) shot Howard in a Reno motel room, (2) wrapped her in a blanket and transported her body to California while she was still alive, and (3) shot her in the back of the head, at the direction of a man he referred to as "El Jefe," on the side of the highway where her body was later discovered.

---

[1] This procedural background is derived from the exhibits provided by the respondents at ECF Nos. 53-57 and this Court's own docket.

Prior to sentencing, Nuno Velasco filed a motion to withdraw the guilty plea, claiming, among other things, that he witnessed Alvaro "Sleepy" Romero shoot Howard in the Reno motel room and that Romero had admitted killing Howard to David Cerritos, a fellow inmate in the Washoe County jail, and to Roseanna Saldana, Romero's girlfriend at the time of the killing. At the hearing on the motion, however, Nuno Velasco's counsel advised the court that the defense team had spoken with Saldana, who indicated that she was not a percipient witness to the shooting and that Alvaro "Sleepy" Romero had not told her that he shot Howard. Counsel also notified the court that Cerritos had been administered a polygraph test, on which he performed poorly.

The state district court denied the motion and subsequently sentenced Nuno Velasco to consecutive terms of ten to life. The judgment of conviction was entered on May 1, 2007. Nuno Velasco appealed. On appeal, he challenged the denial of his motion to withdraw his plea, asserting that he was coerced into pleading guilty and that he had a credible claim that he was innocent of the offense. The Nevada Supreme Court affirmed the conviction.

Nuno Velasco then filed a petition for writ of habeas corpus and a supplemental counseled petition, which the state district court denied. Nuno Velasco appealed, raising three claims of ineffective assistance of counsel on appeal: (1) that counsel failed to conduct a proper pre-trial investigation, (2) that counsel failed to move for severance of his case from his co-defendant's case, and (3) that counsel failed to notify him of his rights under the Vienna Convention. The state district court held an evidentiary hearing and subsequently denied the petition. The Nevada Supreme Court affirmed the denial of relief.

On August 12, 2013, this Court received Nuno Velasco's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1-1.) On February 16, 2016, Nuno Velasco filed the amended petition that is before the Court for a decision on the merits.[2] (ECF No. 47)

---

[2] On October 21, 2016, Nuno Velasco abandoned Ground 5 of the amended petition in response to respondents' assertion that the claim is unexhausted. (ECF No. 65.)

## II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

3

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."). Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

### III. DISCUSSION

#### A. Ground 1

In Ground 1, Nuno Velasco claims that his conviction and sentence are unconstitutional because the state district court did not allow him to withdraw his guilty plea. According to Nuno Velasco, it was constitutional error for the court to not permit withdrawal of his plea because (1) he had been threatened and feared for his life when he entered the plea, (2) he is actually innocent of the offense, and (3) the crime occurred in California, but he was charged with committing the crime in Nevada.

In deciding Nuno Velasco's direct appeal, the Nevada Supreme Court addressed the claim alleged herein as Ground 1 as follows:

4

Nuno-Velasco's sole contention on appeal is that the district court erred in denying his presentence motion to withdraw his guilty plea. He asserts that he was coerced into the plea to help his cousin/codefendant and he has presented a credible claim of innocence. Along with the motion to withdraw his plea, Nuno-Velasco filed an affidavit in which he claimed (1) Howard was killed by Alvaro "Sleepy" Romero, (2) Romero admitted to David Cerritos and Roseanna Saldana that he killed Howard, (3) Roseanna Saldana possessed material information that would exonerate Nuno-Velasco, (4) Nuno-Velasco was being set up as a "fall guy" for a drug cartel run by "El Jefe" Rogelio Silva, (5) the order to kill Howard was given by El Jefe's son Samuel "Smokey" Silva to Alvaro Romero, and (6) the Silvas tried to kill Nuno-Velasco because Nuno-Velasco knew that Romero had killed Howard.

"A district court may, in its discretion, grant a defendant's [presentence] motion to withdraw a guilty plea for any 'substantial reason' if it is 'fair and just.'"[2] In considering "whether the defendant advanced a substantial, fair, and just reason to withdraw a plea, the district court must consider the totality of the circumstances to determine whether the defendant entered the plea voluntarily, knowingly, and intelligently."[3]

The district court "has a duty to review the entire record to determine whether the plea was valid . . . [and] may not simply review the plea canvass in a vacuum."[4]

On appeal from the district court's determination, we will presume that the lower court correctly assessed the validity of the plea, and we will not reverse the lower court's determination absent a clear showing of an abuse of discretion.[5] If the motion to withdraw is based on a claim that the guilty plea was not entered knowingly and intelligently, the burden to substantiate the claim remains with the appellant.[6]

There is no evidence in the record that the district court abused its discretion in denying Nuno-Velasco's presentence motion to withdraw his guilty plea. In considering Nuno-Velasco's motion the district court properly considered the totality of the circumstances, including (1) Nuno-Velasco's written motion and affidavit, (2) the transcript of his plea canvass, (3) the transcript of the preliminary hearing, (4) the representations of defense counsel, (5) all papers and pleadings on file, and (6) the defendant's own testimony. After review of the entire record, the district court concluded that Nuno-Velasco had not presented a credible claim of innocence or established that his plea was involuntarily entered and that there was no fair or just reason to permit withdrawal of the guilty plea.

The record indicates that Nuno-Velasco knowingly and voluntarily pleaded to second-degree murder. During the plea canvass, Nuno-Velasco denied that anyone had threatened him to get him to enter the plea of guilty. He admitted that he was entering a guilty plea to second-degree murder because he was in fact guilty of that crime. Nuno-Velasco stated that he understood the consequences of his plea. Likewise, in the guilty plea memorandum signed by Nuno-Velasco on May 15, 2006, he again acknowledged that his plea was not the result of any threats or coercion. Because Nuno-Velasco was canvassed thoroughly and signed a guilty plea memorandum, the record does not support his claims of coercion.[7]

Nor did Nuno-Velasco articulate a credible claim of innocence.[8] Nuno-Velasco confessed to Detective James Stegmaier of the Reno Police Department that he had murdered Howard. Nuno-Velasco also confessed to a Fresno County Sheriff's Office detective that he killed Howard. Further, his co-defendant and cousin Uriel Barajas-Velasco gave a separate confession to police that mirrored the details of Nuno-Velasco's admissions. Specifically, Nuno-Velasco stated that he shot Howard in the shoulder at the Rancho Sierra Motel in Reno, Nevada. He stated that he and Barajas-Velasco put Howard in the trunk of her car and drove to Merced, California to speak with a person known as "El Jeffe" [sic]. Nuno-Velasco stated that at El Jeffe's [sic] direction he and Barajas drove Howard to a spot on Highway 165, took her out of the trunk, and executed her on the side of the road.

At the preliminary hearing, William Edwards testified that he found Howard's body on the side of Highway 165 near Los Banos, California. Merced County Deputy Sheriff Gerald Dover testified that Howards body was found wrapped in a floral print bedspread, that in Howard's pocket was a one-way bus ticket from Sacramento to Reno, and that the autopsy revealed a bullet fragment inside her skull and a pattern of chipping that indicated a shot to the back of Howard's head at close range. He further testified that he received an anonymous phone call stating that those responsible for the murder were at a residence in Fresno, California. At the specified residence the police found Nuno-Velasco and Barajas-Velasco, along with Howard's car with blood in the trunk.

Faviola Mariscal testified that on March 31, 2002, she saw Nuno-Velasco at the Rancho Sierra Motel. She testified that she left with a group of people to go to the Sands Hotel and Casino across the street and that Nuno-Velasco and Howard remained at the motel. Maria Mariscal testified that after gambling at the Sands she returned with the others to the motel and saw Nuno-Velasco inside Howard's car, but did not see Howard. She also testified, that when they returned Nuno-Velasco was acting nervous and that he and Barajas-Velasco were looking in the trunk of Howard's car. She further testified that when she returned to the motel a few days later she peeked in the room and saw "a bunch of blood."

Officer Wesley Myers of the Reno Police Department testified that the bedspread found wrapped around Howard's body appeared to be the same as the bedspreads from the Rancho Sierra Motel. He further testified that blood and bullet evidence were in [sic] found in the bathroom of the motel room where Nuno-Velasco and Barajas-Velasco had been staying. He testified that he found pooled blood in the trunk of Howard's car. The evidence presented at the preliminary hearing was consistent with Nuno-Velasco's confession to police.

The exculpatory evidence listed in Nuno-Velasco's affidavit was never produced. Nuno-Velasco's girlfriend at the time of Howard's murder, Roseanna Saldana, was contacted by defense counsel and admitted that she was not a percipient witness to the shooting. She further denied that a third party had admitted responsibility for the murder. David Cerritos, who claimed that Alvaro Romero had told him in prison that Barajas-Velasco

was "in here for something I did," was interviewed by defense counsel and was found not to be a credible witness. A polygraph exam was conducted

and Cerritos "didn't do very well." Furthermore, the only evidence of a conspiracy by the Silva family to set up Nuno-Velasco for Howard's murder is Nuno-Velasco's own self-serving affidavit. The district court was presented with no credible evidence supporting Nuno-Velasco's claims of innocence.

Based on the foregoing, we conclude that the district court did not abuse its discretion by denying Nuno-Velasco's presentence motion to withdraw his guilty plea.

---

[2]*Woods v. State*, 114 Nev. 468, 4?5, 958 P.2d 91, 95 (1998) (quoting *State v. District Court*, 85 Nev. 381, 385, 455 P.2d 923, 926 (1969)); *see also* NRS 176.165.

[3]*Crawford v. State*, 117 Nev. 718, 721-22, 30 P.3d 1123, 1125-26 (2001).

[4]*Mitchell v. State*, 109 Nev. 137, 147, 848 P.2d 1060, 1062 (1993).

[5]*Bryant v. State*, 102 Nev.268, 721 P.2d 364 (1986).

[6]*Id.*

[7]*Molina v.State*, 120 Nev. 185, 191, 87 P.3d 533, 537-38 (2004); *Crawford v. State*, 117 Nev. 718, 722, 30 P.3d 1123, 1126 (2001) ("A thorough plea canvas coupled with a detailed, consistent, written plea agreement supports a finding that the defendant entered the plea voluntarily, knowingly, and intelligently.")

[8]*See Mitchell*, 109 Nev. at 141, 848 P.2d at 1062.

(ECF No. 56-12 at 2-7.[3])

To the extent Ground 1 challenges the trial court's exercise of discretion under state law, the claim is not cognizable as a federal habeas claim. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). In addition, no U.S. Supreme Court case recognizes a constitutional right to withdraw a guilty plea. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue presented] here, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'").

There is U.S. Supreme Court precedent, however, recognizing a right under the Due Process Clause to have one's guilty plea be both knowing and voluntary. *See Boykin*

---

[3]Citations to page numbers for documents on this Court's electronic docket are based on CM/ECF pagination.

7

*v. Alabama*, 395 U.S. 238, 242-43 (1969). The Court in *Boykin* held that, to satisfy this requirement, the record must show that the defendant was made aware that he was waiving his privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to a trial by jury, and the right to confront one's accusers. *Id.* at 243. The Court has identified other prerequisites for a plea to be considered knowing and voluntary. For example, a guilty plea is voluntary for due process purposes only if a defendant has received notice of the true nature of the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). In addition, a guilty plea is not "voluntary," and thus invalid, when it is the product of threats, improper promises, or other forms of wrongful coercion. *See Brady v. United States*, 397 U.S. 742, 754-55 (1970). Also, a plea of guilty is voluntary and knowing only if it is "entered by one fully aware of the direct consequences" of his plea. *Id.* at 755.

Nuno Velasco makes vague allegations that he entered the guilty plea because the Silvas had threatened him and/or his family and because he was pressured to help Barajas Velasco, his cousin and co-defendant. (ECF No. 70 at 8.) Absent from the record is any credible evidence substantiating these claims. Moreover, a guilty plea entered in order to benefit a co-defendant is not unconstitutional *per se. See United States v. Caro*, 997 F.2d 657, 659-60 (9th Cir.1993). Instead, a court considers "all of the relevant circumstances surrounding" a guilty plea in determining whether it was voluntary. *Brady*, 397 U.S. at 749.

The guilty plea agreement Nuno Velasco signed together with the trial court's plea canvass satisfied the constitutional requirements set forth above. (ECF Nos. 55-3 and 55-4.) Without any evidence to support his claims of coercion, Nuno Velasco has not overcome the strong presumption that he understood the nature of the charges against him and the rights he was waiving and that he voluntarily entered his guilty plea. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (holding that the petitioner's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable

///

1 barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open
2 court carry a strong presumption of verity").

3 Similarly, a claim of "actual innocence" does not, in and of itself, provide a basis
4 for overturning a conviction. Instead, a claim of "actual innocence" provides a mechanism
5 through which a petitioner may have a court consider an otherwise procedurally defaulted
6 claim of a constitutional violation. *See Schlup v. Delo*, 513 U.S. 298, 323–27 (1995)
7 (noting that a procedurally defaulted habeas petitioner must show that a constitutional
8 violation has probably resulted in the conviction of one who is actually innocent). Even if
9 the Court were to consider the claim of actual innocence as a basis for setting aside his
10 guilty plea, Nuno Velasco has not met the requirements for such a claim. To establish a
11 claim of actual innocence a "petitioner must demonstrate that, in light of all the evidence,
12 it is more likely than not that no reasonable juror would have convicted him. Petitioner
13 bears the burden of proof on this issue by a preponderance of the evidence, and he must
14 show not just that the evidence against him was weak, but that it was so weak that no
15 reasonable juror would have convicted him." *Lorentsen v. Hood*, 223 F.3d 950, 954 (9th
16 Cir. 2000) (internal quotations and citations omitted). "[A] petitioner does not meet the
17 threshold requirement unless he persuades the district court that, in light of the new
18 evidence, no juror, acting reasonably, would have voted to find him guilty beyond a
19 reasonable doubt." *Schlup*, 513 U.S. at 329.

20 In support of his claim of actual innocence, Nuno Velasco offers only the evidence
21 that was reasonably discounted by the Nevada Supreme Court. When weighed against
22 Nuno Velasco's confession to the police, which was corroborated by his co-defendant's
23 confession, together with his admissions of guilt in both the written plea agreement and
24 sworn statements made during the plea colloquy, Nuno Velasco's mere assertions of
25 innocence fall short of meeting his burden of proof.

26 Finally, Nuno Velasco's claims with respect to the location of the crime also do not
27 undermine the validity of his guilty plea. Statutes have been enacted in many states that
28 allow the state to assert jurisdiction if conduct constituting any part of the crime was

committed, or if the effect or result of such conduct occurred, within its borders.[4] While no court would accept the notion that a state has the power to punish anyone who commits a crime anywhere, regardless of the existence of a harmful effect on the state or its citizens, the limits a state must observe in asserting jurisdiction over conduct occurring beyond its boundaries is not clearly defined in federal jurisprudence, nor can it be attributed to any particular constitutional provision. *See* Laycock, Equal Citizens of Equal and Territorial States: The Constitutional Foundations of Choice of Law, 92 Colum. L. Rev. 249, 318 (1992). Also, a state's authority to prosecute crimes is not derived from the federal government, but instead from its own inherent sovereignty. *Heath v. Alabama*, 474 U.S. 82, 89 (1985) (citations omitted).

No Supreme Court case (or other federal law authority) undermines to any appreciable extent the notion that a state may assert criminal jurisdiction even though only a part of the crime occurs within the state's boundaries. Even accepting that Nuno Velasco fired the fatal shot in California, his course of conduct and the repercussions resulting therefrom had a connection to Nevada sufficient to bestow jurisdiction on the state. *See* NRS § 171.020.[5]

Based on the foregoing, this Court must defer to the Nevada Supreme Court's decision under § 2254(d) because neither the reasoning nor the result of the decision contradicts U.S. Supreme Court precedent. While the Nevada Supreme Court couched its decision primarily, if not entirely, in terms of state law, the standards it employed in denying relief were no less protective of Nuno Velasco's rights (and perhaps more so)

---

[4]Ariz. Rev. Stat. Ann. § 13-108; Ark. Code Ann. § 5-1-104; Colo. Rev. Stat. Ann. § 18-1-201; Ga. Code Ann. § 17-2-1; Haw. Rev. Stat. § 701-106; Ill. Comp. Stat. Ann. ch. 720, § 5/1-5; Ind. Code Ann. § 35-41-1-1; Kan. Stat. Ann. § 21-3104; Ky. Rev. Stat. Ann. § 500.060; Me. Rev. Stat. Ann. tit. 17-A, § 7; Minn. Stat. Ann. § 609.025; N.H. Rev. Stat. Ann. § 625:4; N.J. Stat. Ann. § 2C:1-3; Ohio Rev. Code Ann. § 2901.11; Pa. Cons. Stat. Ann. tit. 18, § 102; S.D. Cod. Laws § 22-3-9; Tex. Penal Code Ann. § 1.04; Utah Code Ann. § 76-1-201.

[5]To the extent that Nuno Velasco challenges the legal conclusion that his actions bestowed jurisdiction on Nevada by way of NRS § 171.020, he presents an issue of state law. Clearly, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

than the federal standards discussed above. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that state court is not required to cite U.S. Supreme Court cases, or even be aware of them, to avoid its decision being "contrary to" U.S. Supreme Court precedent). In addition, the court's findings of fact were reasonable in light of evidence presented in the state court proceeding.

Ground 1 is denied.

**B.     Ground 2**

In Ground 2, Nuno Velasco claims he received ineffective assistance of counsel, in violation of his constitutional rights, because counsel failed to conduct an adequate pre-trial investigation into the underlying crime. According to Nuno Velasco, an adequate investigation would have revealed that he was factually innocent and that the State of Nevada lacked jurisdiction to prosecute him for murder since the crime occurred in California. He further alleges that, had counsel conducted an adequate investigation, he would not have pleaded guilty and would have, instead, insisted on going to trial.

Ineffective assistance of counsel (IAC) claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief — deficient performance by counsel and prejudice. 466 U.S. at 687. To meet the performance prong, a petitioner must demonstrate that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. As to the prejudice prong, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696. Put another way, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a petitioner must show both that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *Hill v.*

*Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel).

In addressing Nuno Velasco's IAC claims in his state post-conviction proceeding, the Nevada Supreme Court correctly identified *Strickland/Hill* as the governing standard. (ECF No. 57-29 at 2-3.) The court addressed the claim alleged herein as Ground 2 as follows:

> [A]ppellant argues that trial counsel was ineffective for failing to conduct a pretrial investigation into the murder or potential mitigating circumstances until four years after appellant's arrest. Appellant contends that an independent and timely investigation would have shown that he was innocent, that Alvaro "Sleepy" Romero had admitted to the killing, that Roseanna Saldana had material evidence to exonerate him, that he had been coerced into pleading guilty, and that the State lacked jurisdiction to prosecute him for murder. Appellant failed to demonstrate deficiency or prejudice. His assertions as to what an investigation would have uncovered are speculative and conclusory with no factual support. *See Hargrove v. State*, 100 Nev. 498, 502–03, 686 P.2d 222, 225 (1984). Furthermore, on direct appeal, this court rejected his claims of innocence, coercion, and exculpatory evidence. *Nuno-Velasco v. State*, Docket No. 49574 (Order of Affirmance, May 16, 2008). This court specifically noted that Roseanna Saldana admitted to defense counsel that she was not a percipient witness to the shooting and defense counsel determined that another possible witness was not credible in claiming that Alvaro Romero admitted to the killing. *See id*. Therefore, appellant failed to demonstrate that counsel conducted an inadequate pretrial investigation. As to his assertion that the district court lacked jurisdiction, he fails to make any cogent argument on this point. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). Thus, the district court did not err in denying this claim.

(*Id*. at 3)

As discussed above in relation to Ground 1, Nuno Velasco has not substantiated his claim of factual innocence. More to the point, he has not rebutted the Nevada Supreme Court's factual determinations in deciding Ground 2 and those determinations are reasonable in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d)(2) and (e)(1). Consequently, he has not established that any shortcoming in counsel's pre-plea investigation resulted in *Strickland*-level prejudice.

Nuno Velasco's claim as to counsel's failure to challenge the state district court's jurisdiction omits the fact that counsel joined in co-defendant Barajas Velasco's pre-trial petition for writ of habeas corpus on the issue, which was denied. (ECF Nos. 54-6, 54-9, 54-10, 54-13, 54-14.) Nuno Velasco has not shown that counsel's efforts in this regard

fell below the *Strickland* standard or that a more vigorous challenge had a reasonable probability of succeeding.

Because the Nevada Supreme Court's denial of Ground 2 was neither contrary to the *Strickland/Hill* standard, nor was it an unreasonable application of that standard, this Court must defer to it.

Ground 2 is denied.

**C.     Ground 3**

In Ground 3, Nuno Velasco claims he received ineffective assistance of counsel, in violation of his constitutional rights, because counsel failed to move to sever his case from his co-defendant's case. In support of this claim, he notes that he has maintained his innocence and only pleaded guilty because his aunt convinced him that if he did not, his cousin/co-defendant would receive the death penalty. According to Nuno Velasco, he would not have been forced to plead guilty had counsel moved to sever the cases.

The Nevada Supreme Court addressed the claim alleged herein as Ground 3 as follows:

> [A]ppellant argues that trial counsel was ineffective for failing to sever his case from that of his cousin's. Appellant contends that he agreed to plead guilty only because his cousin's mother convinced him that his cousin would be sentenced to death if appellant went to trial. Appellant failed to demonstrate deficiency or prejudice. We note that the record indicates that the district court ordered the trials to be severed prior to the entry of appellant's guilty plea. In any event, appellant failed to demonstrate a reasonable probability that, had the cases been severed, he would not have pleaded guilty and would have proceeded to trial. Thus, the district court did not err in denying this claim.

(ECF No. 57-29 at 3-4.)

The record before this Court does not include the state district court's order that the trials be severed or the basis for such a ruling. Nonetheless, the Nevada Supreme Court's prejudice determination was reasonable. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Nuno Velasco's claim that he was coerced into pleading guilty by his aunt is directly contradicted by his guilty

plea memorandum and his plea canvass. (ECF Nos. 55-3 and 55-4.) And, his assertion that he would have insisted on going to trial if the cases had been severed is supported by nothing other than his bare claim. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) ("[A] petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief."); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994) ("Conclusory allegations which are not supported by specific facts do not warrant habeas relief.").

Here again, the Nevada Supreme Court's denial of the claim was neither contrary to the *Strickland/Hill* standard, nor was it an unreasonable application of that standard.

Ground 3 is denied.

**D.     Ground 4**

In Ground 4, Nuno Velasco claims he received ineffective assistance of counsel, in violation of his constitutional rights, because counsel failed to advise him of his rights under the Vienna Convention on Consular Relations. In support of this claim, Nuno Velasco notes that he is an undocumented, illegal alien from Guadalajara, Mexico, and that, at the time of his arrest, he had only an elementary education, was functionally illiterate, and spoke no English. According to Nuno Velasco, the Convention imposes three separate requirements on the detaining authority: 1) to notify without delay the appropriate consulate or embassy of a foreign national's arrest and detention, 2) to forward without delay communications from a detained national to the appropriate consulate or embassy, and 3) to inform a detained foreign national of his "rights" under the Vienna Convention. He further alleges that, had the Mexican consulate been notified, it could have (1) provided him with an explanation of the differences between the American and Mexican legal system, (2) conducted its own independent and timely investigation, (3) filed briefs on his behalf, and/or (4) intervened directly in his case.

In deciding Nuno Velasco's direct appeal, the Nevada Supreme Court addressed the claim presented under Ground 4 as follows:

///

14

> [A]ppellant argues that trial counsel was ineffective for failing to advise appellant of his rights under Article 36 of the Vienna Convention and for failing to notify the Mexican consulate about appellant's prosecution. Appellant contends that because he was a Mexican national, the Mexican consulate would have conducted its own investigation into the charges, filed legal briefs on appellant's behalf, and provided appellant with an explanation of Nevada's legal system and how it differed from Mexico's system. Even assuming that appellant was not advised by the arresting agency or by counsel of his right to contact the Mexican consulate, appellant failed to demonstrate prejudice. Appellant was provided with counsel, investigative services, and an interpreter to assist him during the criminal proceedings, and he provided no evidence as to what further actions the Mexican consulate would have taken. This court has rejected the proposition that a violation of the Vienna Convention requires automatic reversal of a conviction. *Garcia v. State*, 117 Nev. 124, 129, 17 P.3d 994, 997 (2001). Thus, he failed to demonstrate a reasonable probability that, if the consulate had been notified, appellant would not have pleaded guilty and would have insisted on going to trial. Accordingly, the district court did not err in denying this claim.

(ECF No. 57-29 at 4.)

The Nevada Supreme Court was correct in concluding that a violation of the consular access provisions of the Vienna Convention is not grounds for habeas relief, per se. *See Ayala v. Davis*, 813 F.3d 880, 881 (9th Cir. 2016) (holding that, even if the Vienna Convention is judicially enforceable, a petitioner must show prejudice from its violation, which is a high burden). So, as with other habeas claims of pre-plea ineffective assistance of counsel, Nuno Velasco must, at a minimum, show that the action, or inaction, of counsel caused him to enter a guilty plea rather than proceed to trial.

While the record indicates that a representative from the Mexican consul attended Nuno Velasco's state post-conviction evidentiary hearing, the representative did not provide any testimony. (ECF No. 57-12 at 10-13.) Nuno Velasco has not proffered any other evidence to support his claim that he was prejudiced by counsel's failure to advise him of his rights under the Vienna Convention. Accordingly, he has not rebutted the Nevada Supreme Court's factual determinations and those determinations are reasonable in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d)(2) and (e)(1). Because the Nevada Supreme Court's decision was neither

///

///

15

contrary to the *Strickland/Hill* standard, nor was it an unreasonable application of that standard, this Court must defer to it.

Ground 4 is denied.

## IV. CONCLUSION

For the reasons set forth above, Nuno Velasco's petition for habeas relief is denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Nuno Velasco's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Nuno Velasco's habeas claims.

It is therefore ordered that Nuno Velasco's amended petition for writ of habeas corpus (ECF No. 47) is denied. The Clerk will enter judgment accordingly.

It is further ordered that a certificate of appealability is denied.

///

///

1     It is further ordered that respondents' motion for an extension of time (ECF No. 68)
2 is granted *nunc pro tunc* as of May 17, 2017.
3     DATED THIS 12th day of September 2017.

                                                                                                 _____
                                                                                                 MIRANDA M. DU
                                                                                                 UNITED STATES DISTRICT JUDGE